## ARMSTRONG CO. v. WALLING.

### No. 4232.

Circuit Court of Appeals, First Circuit.

May 7, 1947.

George A. McLaughlin, of Boston, Mass., for appellant.

Frederick U. Reel, Dept. of Labor, William S. Tyson, Sol., Bessie Margolin, Asst. Sol., and Morton Liftin, U. S. Department of Labor, all of Washington, D. C., and George H. Foley, Regional Atty., of Boston, Mass., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

516

MAHONEY, Circuit Judge.

The Administrator of the Wage and Hour Division, United States Department of Labor, brought this action under § 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to enjoin the appellant from violating the provisions of § 15(a) (1) and (2) of the Act. The parties hereto have agreed upon the facts in the case and the lower court has adopted them as its findings.

The appellant, a Massachusetts corporation with its principal office and place of business in the Boston and Maine Railroad Station, in the City of Boston (known as the North Station), maintains retail stands or selling counters located in places easily accessible to the public, in the North Station as well as in other railroad stations in Massachusetts, Maine, New Hampshire and Vermont, where sales of sandwiches, coffee, milk and like products, as well as books, periodicals, candy and smoking supplies, are sold by clerks to the public. There are several of these stands in the concourse in the North Station. It also maintains a commissary in the North Station which has direct communication with the stands on the concourse by means of an arcade. The arcade is owned by the Boston and Maine Railroad and is used as a sidewalk by the general public. It consists of an area over which part of the railroad building is built. The door of the commissary is located 15 feet and 4 inches from the door to the North Station proper. There is no sidewalk on the westerly side of Causeway Street except the sidewalk located on Boston and Maine Railroad property and in the arcade. This commissary serves as both kitchen and storeroom for the company's stands in the North Station as well as those outside of Massachusetts. Appellant also maintains a train service department whose employees are furnished with sandwiches, tonics, and other related items, which they sell on commission on the trains leaving the North Station for points inside and outside Massachusetts. No sales are made at the commissary but it regularly transfers at cost as often as required sandwiches, milk, tonic, etc. to the retail stands in the North Station, those outside the state and its train service department. About 4 per cent of the total volume of commissary business is transferred to the train service department. No books are kept other than daily records which are forwarded to the central bookkeeping office also located in the North Station. This commissary, the train service department, and the stands both in and outside of Massachusetts are all under one unified management. The commissary employs from nine to eleven employees in addition to a day manager and night manager, all of whom work at the various types of duties performed there, but the greater part of their employment is the making and wrapping of sandwiches.

The appellant also maintains a large warehouse some distance from the North Station which is in full compliance with the Act and with which we are not here concerned.

The lower court held that the employees of the appellant working in its commissary were within the coverage of the Act as employees engaged in the production of goods for commerce under the provisions of § 3(i) and (j) and that they are not exempt within the meaning of § 13(a) (1) or (2) of the Act. It issued its injunction accordingly and the appellant has appealed.

It is argued that the commissary employees are exempt from the requirements of the Act by the provisions of § 13(a) (1) or § 13(a) (2) because they are performing work of a local retailing capacity or because the commissary is a part of one retail establishment. With this we do not agree.

The commissary is integrated with, but physically distinct from, the stands in the station where the retail functions are carried on. It is a distinct place of business and is an establishment under the Act. It bears no closer relationship to the stands in the concourse than it does to the other stands in the various railroad stations inside and outside Massachusetts, and to the train service department. See Phillips Co. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876. There are no sales there and no retail transactions of any kind. Its only business is supplying the stands throughout the system and the railroad train serv-

ice. The business carried on there more closely resembles that of a warehouse or wholesale establishment than a retail store. Cf. Walling v. Goldblatt Bros., Inc., 7 Cir., 1945, 152 F.2d 475, certiorari denied 1946, 328 U.S. 854, 66 S.Ct. 1344. While the business in the commissary may not be of a wholesale nature it certainly is not of a retail nature and to bring it within the exemption of § 13(a) (2) the burden is upon the appellant to prove that its employees are within the letter and spirit of the exception. See Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11, 16. Although the appellant argues that the concourse stands and the commissary are one establishment, and that the latter serves as a kitchen or back room for the stands in the North Station, it disregards the fact that the commissary also serves the train service department and the stands outside the North Station. The combined nature of its business would prevent its classification as a local retail establishment. See Phillips Co. v. Walling, supra, 324 U.S. at page 496, 65 S.Ct. 807, 89 L.Ed. 1095, 15 A. L.R. 876. In Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, 673, 66 S.Ct. 413, it was stated that the word "retail" is restricted to sales made in small quantities to ultimate consumers to meet personal rather than commercial or industrial uses of those articles. The public did not have access to the commissary and no sales were made by it. Any sandwiches or other supplies delivered by it were in large lots and not single orders. We believe that the commissary had none of the characteristics required under the language of § 13(a) (2) to make it a retail establishment.

▉▉ The exemption under § 13(a) (1) applies to "any employee employed in a * * * local retailing capacity * * * (as such terms are defined and delimited by regulations of the Administrator)". Upon the authority of the Act the Administrator has promulgated regulations, Title 29, Chapter V, Code of Fed.Regs. (Supp.1938), Part 541, § 541.4, which define and delimit the exemption to include:

"* * * any employee—

"(A) who customarily and regularly is engaged in

"(1) making retail sales the greater part of which are in intrastate commerce; or

"(2) performing work immediately incidental thereto, such as the wrapping or delivery of packages, and

"(B) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 per cent of the number of hours worked in the workweek by such nonexempt employees."

The contention is made that the commissary employees are exempt from the provisions of the Act because they are performing work immediately incidental to making retail sales, the greater part of which are in intrastate commerce, such as the wrapping or delivery of packages. The wrapping and delivery of sandwiches is immediately incidental to the transfer of the goods from the commissary to the retail stands, but is not within the Regulation promulgated by the Administrator as embracing work immediately incidental to the making of retail sales. We do not believe that this work is immediately incidental to retail selling any more than the furnishing of ice cream, milk or other supplies would be immediately incidental to retail selling. The Administrator has construed the Regulation as not including work incidental to the delivering of articles from a central storehouse to a retail outlet. See 5 Wage Hour Rept. 770 (1942). This interpretation is not plainly erroneous or inconsistent with the Regulation and is of controlling weight in arriving at the correct meaning of the latter. Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700. We cannot say that the making, wrapping and delivery of sandwiches in the commissary comes within the interpretation of this Regulation by the Administrator nor can we say that a strict construction of the exception would allow us to include the employees of the commissary within it.

▉ Although it has frequently been held and is well established that this statute is remedial in its nature and the obligation upon the courts is to construe it liberally this does not apply to the exemptions which deny the benefits of the Act to certain employees. These exemptions must be strictly

518

construed. See Calaf v. Gonzalez, 1 Cir., 1942, 127 F.2d 934. To avail itself of the benefits of the exception, the burden is upon the appellant to bring itself plainly and unmistakably within the terms and the spirit of the exemptions. See Phillips Co. v. Walling, supra, 324 U.S. at page 498, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876. This it has not done.

The judgment of the District Court is affirmed.